# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

ALEXANDER GALLEGOS,

      Petitioner,

v.                                             Civ. No. 17-1172 JB/GJF

R.C. SMITH, Warden,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court[1] on Petitioner Alexander Gallegos's pro se "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") [ECF No. 1], and Respondent's Answer to the Petition ("Answer") [ECF No. 12]. Having reviewed the briefing and being fully advised, this Court recommends the Petition be **DENIED** for the reasons that follow.

### A. PROCEDURAL HISTORY

On September 4, 2015, a Bernalillo County state court jury convicted Petitioner of first-degree trafficking of cocaine by distribution (Count I) and second-degree conspiracy to commit trafficking of cocaine by distribution (Count II). The jury acquitted Petitioner of trafficking of cocaine by possession with intent to distribute (Count III) and conspiracy to commit trafficking of cocaine by possession with intent to distribute (Count IV). Enhancing Petitioner's sentence to account for his habitual offender status, the state district court sentenced Petitioner to twenty-nine years of imprisonment but suspended seven of them, for an actual incarceration period of twenty-two years, followed by a term of supervised probation.

---

[1] U.S. District Judge James O. Browning referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case. *See* ECF No. 2. This Court has concluded that no evidentiary hearing is required or permitted. *See* 28 U.S.C. § 2254(e)(2).

On direct appeal,[2] Petitioner challenged the sufficiency of the evidence for both counts of conviction. He also argued that his right under the Confrontation Clause was violated, specifically through the introduction of a recorded statement of a declarant who did not testify at trial. The New Mexico Court of Appeals ("NMCOA") thereafter proposed summary affirmance. In response, Petitioner's appellate counsel's memorandum in opposition (1) conceded the Confrontation Clause issue, (2) renewed the sufficiency of the evidence argument, and (3) moved to amend the docketing statement to add an additional claim that the combination of the two convictions violated Petitioner's double jeopardy right.

In its August 29, 2016, formal memorandum opinion, the NMCOA affirmed Petitioner's convictions, denied his motion to amend the appellate docketing statement, and determined that he abandoned the sufficiency of evidence challenge as to Count II. Petitioner did not seek review with the Supreme Court of the NMCOA's opinion. On April 18, 2017, however, Petitioner filed a pro se state habeas corpus petition pursuant to N.M.R.A. 5-802. On June 28, 2017, the state district court summarily dismissed the petition. This time, Petitioner sought review by the New Mexico Supreme Court, but that court denied review on August 4, 2017. On November 28, 2017, Petitioner then sought relief in this Court by filing the instant Petition.

## B. FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act (AEDPA), the Court presumes the factual findings of the NMCOA are correct. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). The NMCOA summarized the evidence at trial as follows:

> Defendant communicated to a woman named Destiny that he would sell a pound of
> cocaine to undercover police detectives; Destiny served as an intermediary between

---

[2] Petitioner was represented at trial by retained counsel David Longley, Esq. For his direct appeal, however, Petitioner retained Ahmad Assad, Esq., to represent him.

the undercover detectives and Defendant and his brother in arranging the details of the planned sale of narcotics; Defendant communicated to Destiny that his brother wanted the transaction to happen at his house; Defendant accompanied Destiny to the agreed-upon location to meet the undercover detectives; Defendant and other passengers in a brown Cadillac led the undercover detectives to his brother's house, while Destiny rode with the detectives; Defendant went inside his brother's house; a woman named Vanessa—one of the other passengers in the Cadillac—came outside and asked the detectives and Destiny if they were coming inside, to which the detectives responded that they were not; Vanessa went back into the house, and then exited the house with both Defendant and his brother; Defendant began looking up and down the street, which in the detectives' training and experience constituted "counter surveillance" for police activity or possible robbery activity; Defendant and his brother approached the driver's side of the detectives' vehicle and asked them to come inside the house to do the deal; a detective replied that he was uncomfortable going into the house with all of his cash; Defendant's brother replied that he did not like to do big deals in vehicles; the detectives persuaded Defendant's brother to get in the car; Defendant's brother then pulled out a large baggy, and—wearing latex gloves—began cutting a brick of cocaine while telling the detectives about the quality of the cocaine; and Defendant remained present, but outside the car, while the transaction occurred.

*State v. Gallegos*, No. 35,531, 2016 WL 4942837, at *2 (N.M. Ct. App. Aug. 29, 2016).[3]

### C. CLAIMS PRESENTED

Petitioner advances eight grounds for relief:

(1) <u>Judicial misconduct amounting to due process violation</u>: that the state district court abused its discretion and committed a due process violation when it dismissed his Rule 5-802 petition without holding an evidentiary hearing. Pet. 7-11.

(2) <u>Insufficient evidence of guilt amounting to due process violation</u>: that the state court convicted Petitioner for "crimes not committed" because he "was basically present during a drug deal" rather than actively participating in the transaction. *Id*. at 11-13.

(3) <u>Ineffective assistance of trial counsel</u>: that Petitioner's trial counsel was ineffective for failing to mount a proper defense, to conduct any investigation, or to interview witnesses. *Id*. at 13-16.

(4) <u>Ineffective assistance of appellate counsel</u>: that Petitioner's appellate counsel were ineffective for (a) conceding the Confrontation Clause issue on direct appeal, (b) failing to assert trial counsel's ineffectiveness, (c) failing to include

---

[3] To the extent that any of Petitioner's miscellaneous claims involve other facts, the Court will include them in its analysis of those claims.

in the docketing statement certain legal arguments specifically demanded by Petitioner, and (d) failing to seek certiorari review of the New Mexico Court of Appeals' memorandum opinion. *Id.* at 23-26.

(5) <u>Fourth Amendment violation</u>: that law enforcement unlawfully arrested Petitioner for his "mere presence" at the scene of a drug transaction. *Id.* at 16-20.

(6) <u>Confrontation Clause violation</u>: that admission of a declarant's recorded statement without her testimony at trial violated his Sixth Amendment confrontation rights. *Id.* at 20-23.

(7) <u>Erroneous jury instruction</u>: that multiple constitutional violations occurred "when jury instructions submitted were modified, confusion and misconstrued; [sic] leaving [the] jury in question of determination to what level of doubt may consider a verdict appropriate." *Id.* at 26-28.

(8) <u>Cumulative error</u>: that grounds one through seven in the aggregate constitute cumulative error. *Id.* at 28-30.

Petitioner seeks immediate release from custody, vacatur of his convictions, and a new trial. *Id.* at 31-32.[4]

## D. APPLICABLE LAW[5]

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court decisions be given the benefit of the doubt." *Simpson v. Carpenter*, 912 F.3d 542 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by state courts." *Cole v. Trammell*, 735 F.3d 1194, 1199 (10th Cir. 2013). When a petitioner includes in his habeas application a "claim that was adjudicated on the merits in state

---

[4] In the interests of clarity, the Court has used the pagination appearing in CM/ECF rather than Petitioner's, as Petitioner's filings include unnumbered prefatory pages.

[5] In this section, the Court sets forth the Congressionally-mandated legal standard for federal review of state criminal convictions, as that standard has been interpreted by the Supreme Court and Tenth Circuit. The Court will include in its individual analysis of Petitioner's claims the substantive legal standard that governs each of those claims.

court proceedings," a federal court shall not grant relief on that claim unless the state-court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Simpson*, 912 F.3d 542 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotations and citations omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*.

Once a federal habeas court locates the relevant rationale, it then can determine whether the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a

result different from [that] precedent." *Williams v, Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Simpson*, 912 F.3d 542 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is specific, the range may be narrow," thus "[a]pplications of the rule may be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; "that application must also be unreasonable." *Id.* at 411.

### E. ANALYSIS

The Court will consider in turn each of Petitioner's eight grounds for relief. In its discretion, the Court will examine the due process, Fourth Amendment, and confrontation claims before turning to Petitioner's criticisms of the effectiveness of his trial and appellate counsel. The Court will end its analysis by addressing Petitioner's contention of cumulative error.

## A. Judicial Misconduct Amounting to Due Process Violation[6]

Petitioner first asserts that he is entitled to relief because the state district court dismissed his state habeas petition without holding an evidentiary hearing, thus denying him due process under the Fourteenth Amendment. *See* Pet. 7-11.

### 1. Relevant Facts

Petitioner file his state habeas petition in the Second Judicial District Court on April 18, 2017. Answer, Ex. T at 1 (attach. 2, 28).[7] He advanced eight grounds for relief: (1) violation of due process, (2) right to be free from unlawful search and seizure, (3) right to confrontation, (4) ineffective assistance of trial counsel, (5) erroneous/modified jury instruction, (6) ineffective assistance of appellate counsel, (7) denial of appellate due process, and (8) cumulative error. *Id.* at 3 (attach. 2, 30). After receiving an initial review of the petition by the public defender post-conviction unit,[8] Ex. U (attach. 2, 63-8), the state district court summarily dismissed all counts on June 28, 2018, without conducting an evidentiary hearing. Ex. V at 1-2 (attach. 2, 69-70).

### 2. Legal Standard

For a federal court to issue a writ of habeas corpus to a state prisoner, that prisoner must demonstrate a federal *constitutional* violation, as "federal habeas corpus relief does not lie for

---

[6] As to this claim, Respondent has expressly waived the exhaustion requirement. Answer 5; *see* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). Respondent does not dispute that Petitioner exhausted the available state-court remedies on his remaining grounds for relief. *Id.*

[7] The State's record was filed in two attachments with attachment one including exhibits A-P and attachment two including exhibits Q-Y. As the pages of these attachments are not individually numbered, the Court has included (for ease of reference) two separate page location numbers in each such citation. For example, "Ex. A at 1" corresponds to (unnumbered) page one of exhibit A and "attach. 2, 69" corresponds to the 69th (unnumbered) page of the entire attachment.

[8] N.M.R.A. 5-802(G)(1) requires that the clerk of the court "immediately forward a file-stamped copy of the petition and any attachments to the district attorney and to the public defender department post-conviction unit[.]" Another provision of the rule states "the public defender department may file a statement . . . indicating whether the petition is a proceeding that a reasonable person of adequate means would be willing to bring at a person's own expense and provide sufficient detail for further judicial review of the public defender's assessment." N.M.R.A. 5-802(H)(1).

errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). A cognizable claim targets federal constitutional violations associated with a state court's judgment, rather than a collateral attack on the state's post-conviction proceedings. *See Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) ("Even if it was not barred, [the petitioner's] claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding."). Further, in the Tenth Circuit, a state court's error on post-conviction review, including denying a habeas petition without an arguably warranted evidentiary hearing, is not a cognizable federal habeas claim. *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (denying relief under § 2254 when claim focused on state court's post-conviction remedy); *see also Weaver v. Ward*, 18 F. App'x 697, 698 (10th Cir. 2001) (unpublished) ("[N]o federal constitutional provision requires a state to provide post-conviction review, and any error in this regard is simply a matter of state law and not cognizable on federal habeas review.").

### 3. Analysis

Petitioner asserts that the state district court violated his due process rights and committed judicial misconduct when it allegedly disregarded Rule 5-802, which "governs the procedure for filing a writ of habeas corpus by persons in custody" in the state of New Mexico. N.M.R.A. 5-802(A). Specifically, Petitioner argues that Rule 5-802(H)(4), which pertains to preliminary disposition hearings, required the state district court to grant him an evidentiary hearing. Pet. 9; *see* N.M.R.A. 5-802(H)(4) (providing that "[t]he court shall then determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the court shall dispose of the petition without a evidentiary hearing, but may ask for briefs and/or oral arguments on legal issues[.]").

Any mistake made by the state district court in its application of Rule 5-802, however, would be an error of state law, which is not cognizable in the federal habeas corpus context. *See Sellers*, 135 F.3d at 1339. Furthermore, Rule 5-802 does not *require* a state district court to provide an evidentiary hearing. Rather, it allows for discretion in making such a determination—discretion the state district court appears in all respects to have properly exercised. *See* Exs. U, V. Even if the state procedural rule required a hearing, however, the federal constitution still does not mandate that a state provide a prisoner with any post-conviction review at all—let alone an evidentiary hearing. *See Weaver*, 18 F. App'x at 698. Consequently, Petitioner's claim of judicial misconduct is not cognizable under § 2254 and this Court recommends relief be denied.

### B. Insufficient Evidence of Guilt Amounting to Due Process Violation

Petitioner next asserts a due process violation in the form of the right to be "free from prosecution [and] conviction [for] crimes not committed." Pet. 12. Specifically, he argues the State failed to prove "specific intent beyond a reasonable doubt" because the lead detective on the case testified that Petitioner "was basically present during [the] drug deal." *Id*. at 13. In sum and substance, this claim challenges the sufficiency of the evidence for both counts of which Petitioner was convicted.

### 1. Relevant Facts

On September 4, 2015, a Bernalillo County state court jury convicted Petitioner of first-degree trafficking of cocaine by distribution (Count I) and second-degree conspiracy to commit trafficking of cocaine by distribution (Count II). Answer, Ex. A (attach. 1, 1-10). Petitioner appealed on several grounds, including the sufficiency of the evidence. Exs. N, O (attach. 1, 97-105). The NMCOA's notice of summary disposition proposed rejecting the sufficiency challenge. Ex. P (attach. 1, 106-113). Petitioner responded to the proposed disposition by arguing that the

evidence admitted at trial failed to demonstrate that Petitioner helped, encouraged, or caused his brother to engage in the drug transaction. Ex. Q (attach. 1, 1-17). Additionally, Petitioner argued that his conviction violated double jeopardy. *Id*. Shortly thereafter, the NMCOA issued its final opinion, in which it adopted its reasoning set forth in the summary disposition. Ex. R (attach. 1, 18-26). The NMCOA also held that Petitioner failed to challenge its proposed affirmance pertaining to the sufficiency challenge to support his conspiracy conviction. *Id*. Thus, the court held that Petitioner had abandoned that issue. *Id*. Petitioner also challenged the sufficiency of the evidence in his state habeas petition. Ex. T at 5-6 (attach. 2, 32-3). As set forth above, the state habeas court summarily denied relief on all grounds. Ex. V at 1-2 (attach. 2, 69-70).

### 2. Legal Standard

To begin, generally a federal court cannot review claims if they were defaulted in state court on independent and adequate state procedural grounds. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977). A court will not apply *Wainwright*'s bar, however, if "[the petitioner] has demonstrated cause and prejudice or a fundamental miscarriage of justice." *Smith v. Mullin*, 379 F.3d 919, 925 (10th Cir. 2004) (citing *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("Petitioner must demonstrate "cause for default and actual prejudice"). "Independent state procedural grounds are those that rely exclusively on state law as a basis of decision. Whether a state procedural default rule is adequate to preclude federal review depends upon how consistently and evenhandedly the state applies the rule." *Id*. (internal citations omitted).

Next, to determine the merit of Petitioner's challenge to the sufficiency of the evidence, this Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). *Jackson* incorporates the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Id.* (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004)). When a Petitioner does not contend that the state's factual findings are erroneous, the determination of a claim challenging the sufficiency of the evidence is a question of law and deference must be given to a state court's resolution of sufficiency of the evidence questions. *See Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). The only question for a federal court is whether the state court's findings were "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

### 3. Analysis

At the outset, because the state habeas court relied on the NMCOA's reasoning as one basis for its decision to deny relief, this Court will "look through" and apply AEDPA deference to that decision. *See Sellers*, 138 S. Ct. at 1191–92; *see also* Ex. V at 1 (attach. 2, 69).

Beginning with Count II, the Court recommends that any attack on the conspiracy conviction be considered to have been procedurally defaulted. The NMCOA held that "because it does not appear from the memorandum in opposition that Defendant is challenging our proposed affirmance with respect to the sufficiency of the evidence to support his conspiracy conviction, we deem it abandoned." Ex. R at 5 (attach 2, 22). Therefore, because the state court deemed Petitioner's claim waived and because Petitioner did not challenge that ruling in state court, the conspiracy component of Ground Two is procedurally defaulted. *See Amos v. Roberts*, 189 F. App'x 830, 833 (10th Cir. 2006) (unpublished) (claims were procedurally defaulted where the state court deemed the arguments waived and petitioner failed to challenge that ruling in state

court). Further, Petitioner has not demonstrated cause or prejudice to excuse his default, or that the failure to consider the claim will result in a fundamental miscarriage of injustice. Consequently, this Court recommends that the conspiracy component of Ground Two be deemed procedurally defaulted and not considered as a basis for relief.

Turning to the sufficiency challenge to the trafficking conviction in Count I, Petitioner fails to present clear and convincing evidence that the NMCOA decision runs afoul of 28 U.S.C. § 2254(d). In New Mexico, "it is unlawful for a person to intentionally traffic" cocaine by "distribution." N.M. Stat. Ann. § 30-31-20 (2006). The trial court instructed the jury that, to find Petitioner guilty of trafficking cocaine by distribution, the state must prove beyond a reasonable doubt that (1) Petitioner intentionally transferred, caused transfer of, or attempted to transfer cocaine to another; and (2) Petitioner knew it was cocaine, the possession of which is regulated or prohibited by law. Ex. H at 15 (attach. 1, 70); *see State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). The instruction further explained that Petitioner may be found guilty even though he himself did not do the acts constituting the crime, so long as the state proves beyond a reasonable doubt that (1) the Petitioner intended the crime to be committed; (2) the crime was committed; and (3) the Petitioner helped, encouraged or caused the crime to be committed. Ex. H at 12 (attach. 1, 67).

The elements of the crime are not in dispute. Instead, Petitioner argues the state failed to prove he possessed the specific intent required for a conviction. Petitioner directs this Court to the lead detective's testimony that "[Petitioner] was basically present during [the] drug deal" for that proposition. Pet. 12. In addressing on direct appeal whether Petitioner's "presence" established the required mens rea for a trafficking conviction, the NMCOA concluded "that a jury could have

12

found beyond a reasonable doubt the [Petitioner] was not merely present during the drug transaction, but his actions—in particular, his 'counter surveillance' during the course of the transaction—indicated 'outward manifestation of approval.'" *State v. Gallegos*, No. 35,531, 2016 WL 4942837, at *2 (N.M. Ct. App. Aug. 29, 2016) (quoting *State v. Phillips*, 1971-NMCA-114, ¶ 6, 83 N.M. 5 ("Neither presence, nor presence with mental approbation is sufficient to sustain a conviction as an aider or abettor. Presence must be accompanied by some outward manifestation of expression or approval.")). The NMCOA based this conclusion on the docketing statement's summary of evidence presented at trial. As described in more detail in Section II, *supra*, this evidence in the light most favorable to the state showed that Petitioner (1) communicated that he would sell a pound of cocaine to certain individuals, (2) helped arrange for this transaction to occur at his brother's house, (3) conducted "counter surveillance" in anticipation of the transaction, and (4) accompanied his brother who presented the cocaine to these individuals. *Id.* Under the AEDPA, the NMCOA's determination is entitled to deference. Petitioner has failed to overcome this deference.

Petitioner does not challenge a single piece of evidence, just the inference taken from one excerpt from the trial testimony of the lead detective. Evaluating witness credibility, however, lies exclusively with the jury. *See United States v. Castrorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002). Moreover, even if the lead detective's testimony was susceptible to more than one interpretation, that does not negate a jury's findings or make them irrational. *See Jackson*, 443 U.S. at 326 (citing *Holland v. United States*, 348 U.S. 121, 140 (1955)). The record shows there was more than sufficient evidence for a rational trier of fact to find Petitioner guilty of trafficking cocaine, a conclusion perhaps best demonstrated when the NMCOA isolated the essential elements of the crime and then applied them to the evidence. *See* Exs. P at 1-8 (attach. 1 106-13) (Proposed

Summary Disposition); R at 1-9 (attach. 2 18-26) (Memorandum Opinion). While not specifically citing *Jackson*, the New Mexico Court of Appeals complied with its requirements. Consequently, the Court recommends that Petitioner's second ground for relief be denied.

### C. Confrontation Clause

Petitioner argues that admission of a declarant's recorded statement without her testimony at trial violated his Sixth Amendment confrontation rights. *See* Pet. 21. The Court first observes that this claim appears to have been procedurally defaulted. The NMCOA concluded that "Defendant has not opposed summary affirmance of [the Confrontation Clause] issue, and, in fact, Defendant explicitly concedes the [Confrontation Clause] issue and chose not to further argue it in his memorandum in opposition. Accordingly, this issue is deemed abandoned." *State v. Gallegos*, No. 35,531, 2016 WL 4942837, at *1 (N.M. Ct. App. Aug. 29, 2016). Because Petitioner abandoned the substantive claim on direct appeal, he ordinarily would be deemed to have procedurally defaulted the substantive claim. *See Coleman*, 501 U.S. at 751. Unlike his *Jackson* challenge to the conspiracy charge, however, Petitioner provides at least a potential reason to excuse this default—namely the alleged ineffective assistance of appellate counsel for abandoning the claim. Because the substantive Confrontation Clause claim and the associated ineffective assistance of appellate counsel claim are tethered closely together, and because an ineffective assistance of counsel claim could possibly serve as cause for a procedurally defaulted claim, the Court will assume Petitioner met his burden under *Wainwright* and analyze both claims independently.

#### 1. Relevant Facts

The NMCOA decision described the audio-recordings the admission of which Petitioner now disputes as follows:

On September 25, 2014 Undercover Detectives Martinez and Rascon were contacted by a Confidential Informant who knew a female by the name of Destiny that could assist the detectives in purchasing a large amount of cocaine. After a few phone calls, the Detectives were provided with Destiny's phone number. During the next three hours the Detectives and Destiny engaged in several phone calls to negotiate and plan how the drug deal was going to take place. All of these phone conversations were recorded, placed on a compact disc and tagged into evidence. At about 3:00 p.m. Destiny informed the Detectives that she could obtain a pound of cocaine from her cousin for the price of $14,000.00. This conversation was recorded and admitted into evidence over the defendant's objection of hearsay and on confrontation grounds since Destiny did not testify at trial. Judge Loveless ruled that the statements were admissible as a statement by a co-conspirator and that the statements were not testimonial in that it was not objectively foreseeable that an individual would make these type of statements in contemplation that they would be used in a criminal prosecution at a later date. After several conversations with Destiny about where the transaction would take place, Destiny told the Detectives that her cousin spoke to his brother who told him that his brother wanted to do the deal at his house, because his brother had a newborn baby and did not want to leave the residence. These recordings were objected to by the defense and admitted by the court.

Ex. O at 1-7 (attach. 2, 99-105).

## 2. Legal Standard

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars admission of certain out-of-court statements—but only those that are testimonial in nature. *See Davis v. Washington*, 547 U.S. 813 (2006); *Crawford v. Washington*, 541 U.S. 36 (2004). Such testimonial hearsay is ordinarily barred from use at trial, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford,* 541 U.S. at 53-54. "A statement is considered testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Brinson*, 772 F.3d 1314, 1322 (10th Cir. 2014) (quoting *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005)).

### 3. Analysis

Because the claim was adjudicated on the merits by the NMCOA (before being abandoned by the Petitioner), the Court applies AEDPA deference to the NMCOA's application of *Crawford*. It its analysis, the NMCOA first considered whether the admission of the recorded statements violated the New Mexico Rules of Evidence, but concluded that the statements satisfied the definition of co-conspirator statements—and were therefore non-hearsay under N.M.R.A. 11-801(D)(2)(e). The NMCOA then addressed the question of whether the admission of the statements nonetheless violated the Confrontation Clause. Ex. P at 3-6 (attach. 2, 110)

The NMCOA relied on *State v. Navarette*, 2013-NMSC-003, 294 P.3d 435, which itself applied *Crawford,* to determine whether the Confrontation Clause barred the admission of evidence. *Id.* In its inquiry into whether Destiny's recorded statements were testimonial, the NMCOA suggested that "Destiny's statements do not appear to have been made with the primary purpose of establishing or proving past events, but rather they appear to be operative statements made to accomplish a task within the conspiracy." Ex. P at 5 (attach. 2, 110). The NMCOA further clarified that "Destiny's statements appear to have been made for the purpose of setting up the drug transaction, with no knowledge that the statements were being made to police detectives." *Id.*

This Court cannot say that the NMCOA unreasonably applied *Crawford*. To begin, the NMCOA examined the role Destiny played in the transaction and concluded she acted as an intermediary between undercover agents and Petitioner. This conclusion derived from facts demonstrating that (1) detectives "had a number of phone calls over the course of hours with [her][;]" (2) "[she] informed the detectives that she could obtain a pound of cocaine[;]" (3) "[she] was present . . . when detectives arrived[;] and (4) "[she] got into the detectives' vehicle and told

them to follow the [car to Petitioner's brothers house]." *Id*. The NMCOA further concluded that it "appears that Destiny was in a conspiracy with [Petitioner] . . . to traffic narcotics to the undercover officers." Ex. P at 4 (attach. 2, 109). The NMCOA went so far to cite New Mexico's statutory definition for conspiracy to support its conclusion. *Id*.

After determining Destiny's actions fit that of a co-conspirator, the NMCOA concluded that the primary purpose of her statements was not to "establish[] or prove past events, but rather they appear to be operative statements made to accomplish a task within the conspiracy. That is, Destiny's statements appear to have been made for the purpose of setting up the drug transaction, with no knowledge that the statements were being made to police detectives." *Id*.

This analysis demonstrates a thorough understanding of *Crawford* and its progeny. Further, the NMCOA's understanding of what constitutes testimonial hearsay reasonably tracks Supreme Court precedent. *See Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) ("To rank as "testimonial," a statement must have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.") (quoting *Davis v. Washington*, 547 U.S. 813, 822, (2006)); *see also Michigan v. Bryant*, 562 U.S. 344, 357 (2011) (discussing when statements become testimonial). Accordingly, Petitioner is not entitled to relief because the NMCOA reasonably applied clearly established federal law, as determined by the Supreme Court, when it applied the principles in *Crawford* and other Supreme Court precedent in reviewing and affirming the state district court's decision to admit Destiny's statements into evidence. The Court recommends the Petitioner's substantive Confrontation Clause claim be denied.

### D. Ineffective Assistance of Trial and Appellate Counsel

Petitioner argues his trial counsel was ineffective for failing to mount a proper defense, investigate, and interview witnesses. Pet. 13-14. He argues further that his appellate counsel

were ineffective for (a) conceding the Confrontation Clause issue on direct appeal, (b) failing to argue trial counsel's ineffectiveness, (c) failing to raise contentions advanced by Petitioner in the appellate docketing statement, and (d) failing to seek certiorari review of the NMCOA memorandum opinion. *Id*. at 23-26. Because these claims involve the same type of constitutional violation, the Court will examine them together.

### 1. Relevant Facts

Petitioner retained David Longley, Esq., as trial counsel. Outside of Petitioner's general assertions that Mr. Longley was ineffective for failing to mount a proper defense, investigate, and interview witnesses and the court documents that bear his name, the record does not include any additional facts to support any action or inaction on the part of Mr. Longley during trial. Mr. Longley did, however, file the notice of appeal and docketing statement on behalf of Petitioner. Exs. N, O (attach. 1, 97-105). On appeal, Petitioner retained Ahmad Assed, Esq., as appellate counsel. Mr. Assed responded on Petitioner's behalf to the NMCOA's notice of proposed summary disposition. In the memorandum, Mr. Assed conceded the Confrontation Clause issue, challenged the proposed disposition of the sufficiency claim, and moved to amend the docketing statement to include a double jeopardy claim. Ex. Q (attach. 2, 1-17). The NMCOA affirmed the proposed summary disposition and determined that Petitioner abandoned both the Confrontation Clause claim as well as the sufficiency challenge to the conspiracy conviction. Ex. R (attach. 2, 18-26). The NMCOA also denied Petitioner's motion to amend the docketing statement. *Id*. Mr. Assed did not file a writ of certiorari on behalf of Petitioner.

### 2. Legal Standard

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). For

federal habeas petitions brought under Section 2254(d), *Strickland* is clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (ineffective assistance claim governed by *Strickland*). To succeed under *Strickland*, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687-88. Courts "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 690). Overcoming this burden requires Petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Howell v. Trammell*, 728 F. 3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105 (internal citations and quotations omitted)). "Federal habeas courts must guard against the danger of equating

unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105.

### a. Performance of trial counsel

The state habeas court determined that trial counsel was not ineffective because "the Petitioner has failed to sufficiently allege adequate facts to establish a constitutional violation or the prejudice that resulted from any alleged failures." Ex. V at 1 (attach. 2, 69). Under the AEDPA, this conclusion enjoys a level of deference that Petitioner has not overcome.

Petitioner contends that his trial counsel failed to mount a proper defense, investigate, and interview witnesses. Pet. at 13-16. But nowhere does Petitioner identify what his trial counsel *should* have done to "mount a proper defense," what his trial counsel would have discovered had he conducted a proper investigation, or which witnesses he should have interviewed. Nor does Petitioner make the second showing—that had his trial counsel done those things—there is a reasonable probability that Petitioner would have been acquitted. With such vague and conclusory allegations, Petitioner cannot show the state habeas court's determination failed to comply with *Strickland*. *Strickland* requires unreasonable conduct and prejudice; Petitioner has plainly failed to establish either element. A court simply cannot find unreasonable conduct or prejudice when the Petitioner has not provided even a thread of detail to support his contentions. This Court therefore recommends that federal habeas relief based on a claim of ineffective assistance of trial counsel be denied.

### b. Performance of appellate counsel

Petitioner claims that his appellate counsel were ineffective in four ways:

(1) Conceding the Confrontation Clause issue on direct appeal;

(2) Failing to argue on direct appeal that trial counsel was ineffective;

(3) Failing to raise contentions on appeal that were specifically requested by Petitioner; and

(4) Failing to seek certiorari review of the NMCOA memorandum opinion affirming Petitioner's convictions and sentence.

Pet. 23-26. The Court will analyze these claims *seriatim*.

### i.      Confrontation Clause

Petitioner asserts that appellate counsel were ineffective for conceding the Confrontation Clause issue on direct appeal. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance under the two-pronged standard set forth in *Strickland*. *Id*. Even though counsel raised the issue but later conceded it, the Court has already determined that the issue lacked merit. *See supra* at 14-17. Therefore, as a matter of law, Petitioner's appellate counsels' decision to concede the Confrontation Clause issue did not constitute ineffective assistance under *Strickland*. As a result, this Court recommends that relief based on the alleged ineffective assistance of appellate counsel for failing to persist with the confrontation claim be denied.

### ii.      Failing to argue on direct appeal the ineffective assistance of trial counsel

Petitioner next contends that his appellate counsel were ineffective for failing to argue the ineffective assistance of trial counsel. The state habeas court summarily dismissed the claim

because "Petitioner fail[ed] to allege sufficient facts." Ex. V at 1-2 (attach. 2, 69-70). This Court agrees. As discussed throughout this recommendation, *Strickland* requires a habeas petitioner to demonstrate prejudice. In other words, he cannot just say it, he must show it. Moreover, the AEDPA requires a court to ask whether the state court applied *Strickland* unreasonably, and not inquire into whether the state court merely came to an incorrect conclusion.

For Petitioner to succeed on this claim, he must articulate specific facts that demonstrate actual prejudice. Although New Mexico law permits ineffective assistance of trial counsel claims to be brought on direct appeal, its preference is for such claims to be brought in collateral proceedings. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657 ("[A]n ineffective assistance of counsel claim is more properly brought through a habeas petition."). Nonetheless, New Mexico does allow for an appellate court to remand for an evidentiary hearing if a petitioner "makes a prima facie case of ineffective assistance." *Id.* But a prima facie showing requires facts and prejudice, two things conspicuously absent from the instant petition. All Petitioner proffers to the Court is that his appellate counsel failed to argue trial counsel was delinquent, nothing more. Petitioner's conclusory allegations that trial counsel was ineffective fall well below what *Strickland* requires. Because Petitioner has not established the ineffectiveness of trial counsel, it must follow that he cannot demonstrate prejudice as a result of appellate counsel failing to raise the issue. Consequently, the state habeas court's conclusion is owed deference and this Court recommends that relief based on this ground be denied.

### iii. Failing to Raise on Appeal Claims Demanded by Petitioner

Petitioner next asserts that his appellate counsel were ineffective for failing to "include in [the] docketing statement the contentions advanced by [him]." Pet. 23-24. Petitioner does not, however, enumerate, elaborate, or otherwise explain which arguments his appellate counsel failed

to make.  The state district court denied relief because "Petitioner fail[ed] to allege sufficient facts or applicable law to ascertain the nature of the claimed constitutional violations."  Ex. V at 1-2 (attach. 2, 69-70).  Nothing in the instant petition overcomes the deference to that determination that the AEDPA requires this Court to give.

Applying *Strickland*, this Court cannot find the state habeas court's conclusion unreasonable because Petitioner has manifestly failed to demonstrate how his appellate counsel acted unreasonably or how any prejudice resulted from such conduct.  Petitioner does not recite specific contentions that appellate counsel failed to advance (aside from his ineffective assistance of trial counsel claims, discussed *supra*), nor does he explain how the alleged omissions prejudiced him.  Without more, AEDPA deference defeats Petitioner's contentions and relief based on this ground should be denied.

### iv.    Failing to seek certiorari review

A prisoner cannot generally bring ineffective assistance claims alleging a failure to pursue an issue in a petition for certiorari.  *See United States v. Zamora–Solorzano*, 387 F. App'x 848, 850 n. 1 (10th Cir. 2010) (unpublished) ("To the extent that . . .  [Petitioner] . . . seeks to fault counsel for failing to pursue [an issue] in a petition for certiorari, rather than on direct appeal, that argument fails for the distinct reason that the Sixth Amendment does not provide a right to assistance of counsel in connection with a certiorari petition."); s*ee Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (there is no right to counsel during discretionary appeals).  New Mexico's constitution further embodies this longstanding principle by "provid[ing] that an aggrieved party shall have an absolute right to *one* appeal."  N.M. Const. Art. VI, § 2 (emphasis added).   For these reasons alone, the Court should deny relief.  *See Richardson v. Ploughe*, 577 F. App'x 771, 775 (10th Cir. 2014) (unpublished) (long-standing rule that the absence of right to counsel is enough

to dispose of a request for a certificate of appealability on ineffective-assistance-of-counsel claims).

Even assuming that Petitioner had a right to seek certiorari, his ineffective assistance claim would still be meritless. To establish ineffectiveness in the failure to seek certiorari, Petitioner would still be required to show that the underlying issues were meritorious. *See Hawkins*, 185 F.3d at 1152. On direct appeal, Petitioner argued that (1) the introduction of recorded statements violated his Confrontation Clause rights, (2) there was insufficient evidence to support a conviction, and (3) the docketing statement should be amended to add that the two convictions in concert violated double jeopardy. *See* Ex. Q at 1-17 (attach. 2, 1-17). The NMCOA affirmed Petitioner's convictions and denied his motion to amend the appellate docketing statement. Ex. R at 1-9 (attach. 2, 18-26). This Court has already discussed and dismissed the insufficiency of evidence and Confrontation Clause arguments. This only leaves Petitioner's double jeopardy claim.

The state habeas court summarily denied this claim along with all of Petitioner's ineffective assistance of appellate counsel claims because he "fail[ed] to allege sufficient facts or applicable law to ascertain the nature of the claimed constitutional violations." *See* Ex. V at 2 (attach. 2, 70). The NMCOA directly addressed the issue, however, and this Court will look through and grant that decision deference. *See Sellers*, 138 S. Ct. at 1191–92.

 The NMCOA's opinion, *State v. Gallegos*, No. 35,531, 2016 WL 4942837, at *2 (N.M. Ct. App. Aug. 29, 2016), thoroughly analyzed Petitioner's double jeopardy argument under *Blockburger*. Rejecting Petitioner's claim that the convictions were sustained on a single illegal act, the NMCOA concluded that Petitioner's actions in planning the cocaine transaction were "sufficiently separated by time and place from the Defendant's later actions at his brother's home,

and the quality and nature of the acts—planning and setting up the sale, in concert with at least Destiny—are sufficiently distinguishable from the "counter surveillance" he undertook during the actual sale conducted by his brother." *Id.* Petitioner's federal habeas petition fails to advance any argument as to why the Supreme Court of New Mexico would have ruled in his favor on the double jeopardy question. Consequently, this Court grants deference to the NMCOA's opinion and recommends that relief be denied for ineffective assistance of counsel as it pertains to counsel's failure to seek certiorari.

### E. Fourth Amendment Violation

In sum and substance, Petitioner maintains that law enforcement lacked the particularized suspicion necessary to support his arrest because "he was not engaging in any criminal activity." Pet. 18. As explained below, however, Petitioner failed to litigate this claim in state court and therefore has forfeited the opportunity to raise it here. In addition, Petitioner points to no evidence whatsoever that stemmed from his allegedly illegal arrest, so there would have been no available Fourth Amendment remedy at his criminal trial. Finally, Petitioner's underlying claim is without merit, as no Fourth Amendment violation occurred. *Id.*

### 1. Legal Standard

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Quintana v. Hansen*, 733 F. App'x 439, 445 (10th Cir.) (unpublished), *cert. denied*, 139 S. Ct. 334, 202 L. Ed. 2d 234 (2018) (quoting *Stone v. Powell*, 428 U.S. 465, 482 (1976)).

## 2. Analysis

Petitioner's Fourth Amendment claim should be denied for three separate reasons. First, Petitioner's claim is procedurally defaulted, as he waived this claim by not raising it before trial. Second, this claim is not cognizable because New Mexico provides a meaningful opportunity for defendants to challenge Fourth Amendment violations before the trial court. Finally, Petitioner's arrest did not violate the Fourth Amendment, as it was supported by probable cause. Even assuming a seizure occurred in violation of the Fourth Amendment, Petitioner has not identified any evidence—any fruit of the poisonous tree—that arose from his arrest, that was introduced at trial, and that should have been suppressed instead.

To begin, Petitioner first brought this Fourth Amendment claim in his state habeas petition. The state habeas court, however, determined that Petitioner waived this issue for failing to raise it before trial, in compliance with the New Mexico Rules of Criminal Procedure. Ex. V at 2 (attach. 2, 70). As discussed *supra*, a claim is procedurally defaulted if a state court dispensed of it on independent and adequate state law grounds. The New Mexico Rules of Criminal Procedure provide that "[a] motion to suppress shall be filed no less than sixty (60) days prior to trial, unless, upon good cause shown." N.M.R.A. 5-212(C); *see City of Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 25, 285 P.3d 637, 642 (rules require suppression motions prior to trial). By introducing this issue for the first time in his state habeas petition, Petitioner clearly failed to comply with Rule 5-212(C), thus giving the court an independent and adequate state law ground to dispense with his claim.[9]

Although his claim is therefore procedurally defaulted under *Wainwright*, Petitioner may overcome this bar if he can demonstrate cause and prejudice. *See Smith*, 379 F.3d at 925.

---

[9] At no point has Petitioner even begun to show good cause for failing to raise the issue before trial.

Petitioner fails, however, to make such a showing, and he also fails to overcome the AEDPA deference given to the state habeas court's summary dismissal of the issue grounded in Rule 5-212(C). Nevertheless, for the sake of completeness, the Court will demonstrate why—even if the claim overcame *Wainwright*'s bar—it is nonetheless meritless.

Second, even if Petitioner's arrest violated the Fourth Amendment—which it did not—habeas relief could still only be granted if the state denied Petitioner a full and fair opportunity to litigate a Fourth Amendment claim. *Stone*, 428 U.S. at 482. As mentioned, the Supreme Court requires that a state afford a prisoner an opportunity to litigate his Fourth Amendment claim. *Quintana*, 733 F. App'x at 445. However, Petitioner does not assert—and there is no evidence in the record to support—that he was denied such an opportunity.[10] Thus, Petitioner is foreclosed from raising that claim here.

Third, even if Petitioner properly presented his claim, no unconstitutional seizure occurred. It is a well "settled rule that warrantless arrests in public places are valid" if supported by probable cause. *Collins v. Virginia*, 138 S. Ct. 1663, 1672 (2018) (quoting *Payton v. New York*, 445 U.S. 573, 587–590 (1980)); *see Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (warrantless arrest of individual in public place for a felony is "consistent with the Fourth Amendment if the arrest is supported by probable cause."). A law enforcement officer possesses "probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Morris*, 247 F.3d 1080, 1088 (10th

---

[10] Instead, Petitioner now attacks the level of suspicion police possessed to effectuate the arrest. However, the proper forum to have raised such a claim was during the state court proceedings under Rule 5-212(C), the avenue New Mexico affords defendants to litigate Fourth Amendment issues, not this habeas petition. Such a claim is not only procedurally defaulted, as discussed above, but Plaintiff has not alleged that he was denied opportunity to litigate this claim in state court.

Cir. 2001) (internal quotations and citations omitted). The NMCOA concluded that Petitioner "communicated [to Destiny] . . . that he would sell a pound of cocaine . . . [and] that his brother wanted the transaction to happen at his house." *Gallegos*, 2016 WL 4942837, at \*2. Further, Petitioner (and other passengers) "led the undercover detectives to his brother's house . . . went inside . . . and then exited the house" with his brother. *Id.* Petitioner then conducted "counter surveillance" so the transaction could proceed undisturbed. *Id.* While his brother was "cutting a brick of cocaine" inside the detectives' unmarked car, Petitioner "remained present, but outside the car[.]" *Id.*

In totality, the material facts surrounding Petitioner's arrest demonstrate beyond serious question that a reasonable officer would have had probable cause to believe Petitioner had committed a crime. Even by itself, Destiny's statement to the confidential informant that Petitioner agreed that he "would sell a pound of cocaine" supports a probable cause determination. *See United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 n.5 (10th Cir. 1998) (probable cause may be based, in whole or in part, on co-conspirator's statement). Moreover, after Destiny notified the informant that Petitioner "would sell a pound of cocaine," Petitioner met with undercover detectives at a predetermined location to lead them to his brother's house to conduct the transaction. This level of corroboration—meeting at a predetermined location arranged through the confidential informant and then leading undercover detectives to a separate location to conduct the transaction—manifests well more than the "sufficient indicia of reliability" necessary to establish probable cause. *See Draper v. United States*, 358 U.S. 307, 313 (1959) (tip may form basis for probable cause, especially when police independently corroborate details); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (informant's recitation of detailed facts, when corroborated by police officers, afforded probable cause to believe respondents possessed drugs).

Additionally, by exiting the house with his brother, conducting "counter surveillance," and waiting next to the car during the transaction, Petitioner was also engaged in a "common enterprise" sufficient to establish probable cause. *See Pringle*, 540 U.S. at 373.[11] Thus, these facts demonstrate that probable cause existed to lawfully arrest Petitioner.

Finally, the Court notes that, even if Petitioner's arrest was not supported by probable cause, relief would still be denied. To be sure, as a general rule, evidence obtained in violation of the Fourth Amendment may not be introduced at trial to establish a defendant's guilt. *See Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 (1963) (derivative evidence obtained in violation of Fourth Amendment is inadmissible as fruit of the poisonous tree); *see also Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961) (exclusionary rule applies to state courts). Here, although Petitioner argues that law enforcement violated his Fourth Amendment rights when they arrested him, he does not—and cannot—identify a single piece of evidence introduced at his trial that resulted from the alleged unlawful arrest. *Stone* only allows for habeas relief when a state denied a petitioner the full and fair opportunity to litigate a Fourth Amendment claim, *inter alia*, a suppression hearing to exclude tainted evidence. A habeas petitioner cannot obtain relief when no evidence was admitted that derived from the alleged Fourth Amendment violation. Consequently, this Court recommends that Petitioner be denied relief based on his Fourth Amendment claim.

---

[11] When other circuits have evaluated similar circumstances, they have concluded that the facts supported a finding of probable cause. *See, e.g., United States v. Gomez*, 716 F.3d 1, 8 (1st Cir. 2013) (officers had probable cause to arrest a defendant when they overheard defendant arrange a cocaine sale, observed the defendant and a buyer enter a building after the conversation, and found cocaine on the buyer); *see also United States v. Steppello*, 664 F.3d 359, 364-65 (2d Cir. 2011) (probable cause when officers were present when buyer called defendant to arrange cocaine purchase, corroborating buyer's description of defendant and his vehicle, the purchase time and location, and officers knew defendant called buyer's cell phone while waiting for the transaction).

### F. Erroneous Jury Instruction

Next Petitioner argues that a jury instruction that defined reasonable doubt left the panel "in question of determination to what level of doubt may consider a verdict appropriate." Pet. 26-28.

#### 1. Legal Standard

Supreme Court precedent severely restrains a federal habeas court's role in evaluating jury instructions. *See Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) ("Our habeas precedent places an "especially heavy" burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute."). A state court conviction will only be set aside if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990) (quotations omitted). A petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). "The question is not whether the instruction[s] [were] undesirable, erroneous, or even universally condemned, but whether the instruction[s] so infected the trial that the resulting conviction violates due process." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quotations omitted).

#### 2. Analysis

Petitioner cannot show that the jury instruction he complains of was so infirm as to rise to the level of a due process violation. While Petitioner struggled to identify exactly which instruction allegedly infected the trial—prompting the state habeas court to deny relief for that reason alone—it seems clear to this Court that his challenge focuses on the reasonable doubt charge, Instruction No. 10. *See* Pet. 26-7 ("Petitioner's constitutional right was violated when jury instructions submitted were, modified, confusing, and misconstrued; leaving a jury in question of

determination to what level of doubt may consider a verdict appropriate."); *see also* Ex. H at 11

(attach. 1, 66). Instruction No. 10 read:

> The law presumes the defendant to be innocent unless and until you are satisfied
> beyond a reasonable doubt of his guilt.
>
> The burden is always on the state to prove guilt beyond a reasonable doubt. It is not
> required that the state prove guilt beyond all possible doubt. The test is one of
> reasonable doubt. A reasonable doubt is a doubt based upon reason and common
> sense—the kind of doubt that would make a reasonable person hesitate to act in the
> graver and more important affairs of life.

Ex. H at 11 (attach. 1, 66).

Nothing in the record indicates that the state court modified this instruction in any way or

that its content was erroneous. To the contrary, Instruction No. 10 precisely tracked New Mexico's

Uniform Jury Instructions. *See* New Mex. R., Crim. UJI 14-5060. In addition, the Tenth Circuit

already has considered New Mexico's Uniform Jury Instruction on reasonable doubt and denied

relief. *See Tarin v. Lemaster*, 16 F. App'x 900, 901 (10th Cir. 2001) (unpublished) (denying

certificate of appealability because petitioner failed to demonstrate New Mex. R., Crim. UJI 14-

5060 denied him a constitutional right). Equally fatal, the Supreme Court has determined that the

language contained within this very instruction "gives a common-sense benchmark for just how

substantial such doubt must be." *Victor v. Nebraska*, 511 U.S. 1, 20-21 (1994) (holding that "the

hesitate to act standard [in Nebraska's pattern instruction] gives a common-sense benchmark for

just how substantial such a doubt must be."). Therefore, this Court recommends Petitioner's jury

instruction claim be denied.

### G. Cumulative Error

Petitioner's final claim argues that the aggregate effect of all alleged claims deprived him

of a fair trial.  Pet. 29-31.

### 1.  Legal Standard

"A cumulative-error analysis 'aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'"  *Malone v. Carpenter*, 911 F.3d 1022, 1040 (10th Cir. 2018) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003).  "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine 'only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.'"  *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (quoting *Matthews v. Workman*, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009)).  Instances where courts find deficient performance by counsel must also be aggregated, even if the ineffectiveness claim was ultimately denied for insufficient prejudice.  *Cargle,* 317 F.3d at 1207.

### 2.  Analysis

Petitioner first raised this claim in his state habeas petition.  On habeas review, the state district court summarily dismissed the claim for "fail[ing] to articulate any underlying errors, the accumulation of which could amount to violation of his constitutional rights."  Ex. V at 2 (attach. 2, 70).  Similarly, on direct appeal the NMCOA determined Petitioner's constitutional rights had not been violated.  Moreover, this Court has not discovered even a single constitutional error, let alone the two needed for relief under a cumulative error analysis.  *See Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) ("We cumulate error only upon a showing of at least two actual errors.").  Therefore, the Court recommends relief be denied on the cumulative error claim.

## F. CONCLUSION

For the reasons detailed above, it is **HEREBY RECOMMENDED** that Petitioner's "Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" [ECF No. 1] **BE DENIED WITH PREJUDICE**.

**IT IS SO RECOMMENDED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**